William G. Mitchell, ISB 9662
William G. Mitchell, Attorney at Law, PLLC
P.O. Box 140694
Garden City, ID  83714
Office:  208-995-1451
Fax: 208-694-6460
williamgmitchell@yahoo.com

Eric R. Clark, ISB 4697
CLARK & ASSOCIATES, ATTORNEYS
P.O. Box 2504
Eagle, ID 83616
Office: (208) 830-8084
eclark@EricRClarkAttorney.com

      Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO – SOUTHERN DIVISION

| | |
|---|---|
| Jean WRIGHT,<br><br>                    Plaintiff,<br>vs.<br><br>Dennis and Jeannie MONTGOMERY, individually and as husband and wife.<br><br>                    Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

The Plaintiff, by and through counsel, hereby files this Complaint, and complains and alleges as follows:

**I.    INTRODUCTION.**

1.    This is a slumlord case involving violations of the Federal Fair Housing Act, fraud, negligence, and breach of a lease.

## II. PARTIES AND JURISDICTION.

2. At all times relevant to these proceedings Plaintiff Jean Wright resided in Boise County, Idaho.

3. Jean is elderly, medically and mentally infirm, and resultantly, at all times relevant Jean was disabled as a matter of law.

4. At all times relevant to these proceedings, Defendants Dennis and Jeannie Montgomery resided in Ada County, Idaho, but owned property at issue in this case in Horseshoe Bend, Idaho, which is in Boise County, and commonly known as 523 Bendview Court #6, Horseshoe Bend, Idaho. ("Rental").

5. The property is classified as a manufactured or "mobile" home located in a mobile home park that the Defendants also own, which consists of dilapidated mobile homes that Defendants rent to very low-income renters.

6. This Court has federal question jurisdiction according to 28 USC 1331.

## III. FACTS.

7. On November 11, 2018, Jean signed a lease to rent the Defendants' rental.

8. Although the Defendants represented the Rental was in "good order and repair," the rental had suffered water damage for many years, which resulted in toxic mold, mildew growth, and rot.

9. The Rental was not fit for human habitability on November 11, 2018, when Jean signed her lease.

10. During the lease period, rain caused a partial collapse of the roof of the Rental, further aggravating the already compromised interior.

11. Jean had submitted bona fide repair requests while a tenant, which Defendants ignored.

12. Ultimately, Defendants terminated Jean's lease in retaliation for Jean's repair requests.

13. The Defendants offer "bonus" incentives to their low-income renters who do not make bona fide repair requests.

## IV. CLAIMS.

### COUNT ONE – RETALIATORY EVICTION

14. Jean incorporates and reasserts all prior allegations of fact as if set forth herein.

15. The United States Fair Housing Act prohibits discrimination based on a disability and retaliatory conduct including terminating a lease in retaliation for requesting repairs.

16. The Defendants violated the Fair Housing Act when they refused to make necessary repairs and then evicted Jean in retaliation rather than make the repairs she requested.

17. As a direct and proximate result of the Defendants' violations, Jean has suffered economic damages, the amount of which she will prove at trial.

### COUNT TWO – FRAUD IN THE INDUCEMENT

18. Jean hereby incorporates and reasserts all prior allegations of fact as if set forth herein.

19. The Defendants prey on those with fixed incomes, the elderly, and the mentally and physically infirm.

20. The Defendants represented to Jean that the mobile home they were offering to rent to Jean was safe for human habitability and in good order and repair.

21. This statement was false as the mobile home contained unabated multiple years' worth of toxic mold growth, had severe water damages and was rotting from within.

22. The representation was material to Jean as she was elderly, was on a very limited budget, and was suffering from disabling physical and mental health issues, and needed a safe, secure and habitable home in which to live.

23. The Defendants knew as long-time owners of the Rental that the structure was rotting, had toxic mold, and was unsafe for human habitability.

24. The Defendants intended that Jean rely on their false statement that the rental was in good order and repair and safe for habitability.

25. Jean, due to her mental and physical infirmities was unable to understand, comprehend, or to personally investigate, that the Rental was not in good order or repair, was rotting from within and had toxic mold, and therefore was ignorant of the falsity of the Defendants' false statements.

26. Jean relied on the false statements to her detriment and was justified in relying on these false statements because the Defendants appeared to be legitimate landlords.

27. As a direct and proximate result of the Defendants' fraud, Jean has suffered personal injury and economic damages, the amount of which she will prove at trial.

## COUNT THREE – NEGLIGENCE

28. Jean incorporates all prior allegations of fact as if set forth herein.

29. Defendants had a duty to ensure the Rental was safe for human habitability and was free from dangers, both patent and latent, such as toxic mold.

30. The Defendants breached their duty to Jean when they rented to Jean their mobile home that was not safe for human habitability and contained dangers like toxic mold.

31. As a direct and proximate result of the Defendants' negligence and recklessness, Jean has suffered personal injury and economic damages, the amount of which she will prove at trial.

### COUNT FOUR – BREACH OF THE LEASE

32. Jean incorporates all prior allegations of fact as if set forth herein.

33. Defendants had a duty to provide a safe and habitable residence in consideration for the rent charged.

34. Defendants also had a duty to make timely and appropriate repairs as requested or as circumstances required of them.

35. Defendants breached their lease agreement when they failed to provide a safe and habitable residence and failed to make requested repairs.

36. Defendants also breached the lease agreement when they retaliated against Jean and terminated the lease agreement because Jean requested repairs.

37. As a direct and proximate result of the Defendants' breaches, Jean has suffered economic damages, the amount of which she will prove at trial.

**IV. ATTORNEY FEES.**

38. The Plaintiff was forced to hire and retain legal counsel to pursue this claim and is therefore entitled to attorney fees according to contract, 42 USC 3613(c)(2), I.C. § 6-324, I.C. § 12-121, and the Federal Rules of Civil Procedure.

**V. DEMAND FOR JURY TRIAL.**

39. The Plaintiff hereby demands a trial by jury according to FRCP 38(a), (b) and (c).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays against the Defendants, as follows:

1. For Judgment against Defendants for personal injury special damages of not less than $10,000.00; and,

2. For Judgment against Defendants for personal injury general damages of not less than $100,000.00; and,

3. For Judgment against Defendants for economic damages of not less than $50,000.00; and,

4. For punitive damages according to 42 USC 3613(c)(1) of not less than $250,000; and,

5. For Judgment requiring the Defendants to pay attorney fees and litigation costs to the Plaintiff of not less than $5,000.00 in the event default is obtained, and if a default judgment is entered, and the actual amount of attorney fees and litigation costs the Plaintiff incurs if this matter is contested; and,

6. For such other relief the Court determines is appropriate and proper under the circumstances.

DATED this 1st day of July in the Year 2019.

WILLIAM G. MITCHELL, Attorney at Law, PLLC

_____
WILLIAM G. MITCHELL, For the Plaintiff